1  PICK & BOYDSTON, LLP
   Brian D. Boydston (State Bar No. 155614)
2  10786 Le Conte Ave.
   Los Angeles, CA 90024
3  (213) 624-1996
   (213) 624-9073 fax
4
   Attorneys for Plaintiff WORLDWIDE SUBSIDY GROUP, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLDWIDE SUBSIDY GROUP, LLC, a Texas Limited Liability Company,<br><br>       Plaintiff,<br><br>   v.<br><br>FEDERATION INTERNATIONALE DE FOOTBALL ASSOCIATION, and DOES 1 through 20, inclusive,<br><br>       Defendants.<br>_____ | CASE NO. 2:14-cv-00013-MMM-MAN<br><br>Hon. Margaret M. Morrow<br><br>**FIRST AMENDED COMPLAINT**<br><br>Courtroom:        780 |

   Plaintiff WORLDWIDE SUBSIDY GROUP, LLC a Texas Limited Liability Company, dba INDEPENDENT PRODUCERS GROUP, as and for their Complaint alleges as follows:

**THE PARTIES**

   1.   WSG is informed and believes, and thereupon alleges, that Federation Internationale de Football Association ("FIFA") is and was at all times mentioned herein, an entity organized in Zurich, Switzerland, doing business in the County of Los Angeles, in the State of California.

   2.   WSG is a Texas limited liability, and the successor in interest of all assets previously owned by Worldwide Subsidy Group, LLC, a California limited liability company doing business in the County of Los Angeles, in the State of California.

3. WSG is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said Defendants by such fictitious names. WSG will amend this Complaint, by leave of Court if necessary, to allege their true names and capacities when ascertained.

4. WSG is informed and believes, and thereupon alleges that at all times relevant hereto, each Defendant is and was the agent and servant of the other Defendant and at all times was acting within the scope of said agency and is jointly and severally obligated to the remaining Defendants.

## BACKGROUND

5. WSG is in the business of collecting various types of royalties distributed by governmental and quasi-governmental agencies around the world, including but not limited to royalties collected and distributed by the United States Copyright Office and derived from the secondary transmission of audiovisual works by cable and satellite systems (collectively, "Secondary Rights Royalties"). WSG secures the right to collect such royalties from the owners of such audiovisual works, and is typically required to expend significant monies in order to obtain data necessary to prosecute such rights. WSG's expenditures include but are not limited to the engagement of legal counsel to represent WSG before entities overseen by the U.S. Library of Congress.

6. Defendant FIFA is a professional sports organization, and the owner of telecasts of its sponsored sporting events, including broadcasts of the FIFA "World Cup Soccer".

7. On or about January 18, 2001, WSG solicited FIFA for the purpose of representing FIFA's collection of Secondary Rights Royalties for "World Cup Soccer" broadcasts and other FIFA-controlled events. After the negotiation of the terms of such engagement, WSG modified its format agreement according to the instructions of FIFA personnel ("the Agreement"), and forwarded such modified agreement to FIFA on March 10, 2001. See Exhibit "A".

8. On July 22, 2001, WSG forwarded a letter to FIFA informing it that WSG had made program registrations previously discussed with FIFA representative Roger Feiner, but noting that WSG had yet to receive executed originals of the previously forwarded contract. See Exhibit "B". WSG

1  further indicated that until WSG receives such signed contract, WSG "will proceed in reliance on the
2  terms set forth in the previously forwarded contracts."

3     9.  FIFA took no exception to the July 22, 2001 correspondence, and on July 31, 2001
4  expressly confirmed WSG's engagement pursuant to the terms of the Agreement, wherein it forwarded
5  an email to WSG stating:

6     "We refer to your fax sent to Roger Feiner on 22 July 2001 concerning the above-
7     mentioned matter.
8     "FIFA is interested in testing the services of Worldwide Subsidy Group in the
9     administration of retransmission royalties. Please go ahead with the necessary steps
10    and keep us informed about the proceedings and the outcome."

11 See Exhibit "C". The email was sent by and signed by Martinka Buhler, whom represented herself
12 to be in the Marketing Division of FIFA.

13    10.  Pursuant to the Agreement, FIFA assigned its rights to collect Secondary Rights
14 Royalties to WSG and WSG undertook an obligation to collect said royalties in return for retaining a
15 20% commission of the "Distribution Proceeds". See Exhibit "A", paragraph 4. FIFA warranted
16 that it retained the exclusive authority to the Distribution Proceeds, and had not previously granted
17 such authority to any third party. See Exhibit "A", paragraph 7. Upon WSG's request, FIFA was
18 required to provide any and all documents relating to distribution of FIFA's programs. See Exhibit
19 "A", paragraph 3.

20    11.  The term of the Agreement was terminable upon completion of the first full calendar
21 semi-annual period following written notice by either party, subject to a minimum term of three (3)
22 years.

23    12.  The nature of WSG's business is that it registers its claim to program royalties, and
24 often after many years of negotiations and administrative proceedings, such agencies issue royalty
25 payments (hereinafter "Distribution Proceeds"). Thus, royalties for claims made in "Year One" are
26 generally not collected for several years, and in many cases not until "Year Ten".

27    13.  Given this inherent lag time for collection, the Agreement provided that WSG was
28 granted its authority to collect all Distribution Proceeds "applicable to the Term or prior to the Term,

1  irrespective of when such Distribution Proceeds are payable." See Exhibit "A", paragraph 1.  This
2  provision was necessary to prevent the inequity of WSG making all the appropriate claims for FIFA-
3  owned programming, prosecuting such claims and protecting such claims from forfeiture, only to be
4  denied the benefit of the bargain should the Agreement be subsequently terminated prior to WSG's
5  receipt of program royalties derived from WSG's claims.

6        14.    After entering into the Agreement, WSG dutifully filed secondary rights royalty
7  claims on behalf of FIFA-owned programming, including claims with the United States Copyright
8  Office applicable to the calendar years 2000 through 2012, as was required annually pursuant to the
9  U.S. Copyright Act.  WSG made additional periodically-required filings with the U.S. Copyright
10 Office, also necessary to preserve FIFA's entitlement to Secondary Rights Royalties, pursuant to
11 orders issued by the U.S. Copyright Office, the Copyright Arbitration Royalty Panel, and the
12 Copyright Royalty Board.  In total, WSG made no fewer than forty (40) filings on FIFA's behalf.
13 FIFA's entitlement to Secondary Rights Royalties were preserved exclusively by WSG's filings, and
14 in the absence of WSG's filings, FIFA's claims to Secondary Rights Royalties would have been
15 statutorily forfeited pursuant to the U.S. Copyright Act and the orders of other governing bodies.  To
16 the extent necessary, WSG thereafter participated in negotiations with the various entities and rival
17 claimants, and prosecuted the claims related to the FIFA-owned programming.

18       15.    On or about September 22, 2011, the Copyright Royalty Board issued an order
19 announcing the "Negotiation Period" for distribution of U.S. cable retransmission royalties
20 attributable to calendar years 2000-2003.  In connection therewith, WSG contacted FIFA for the
21 purpose of requesting additional information relating to FIFA's personnel and programming.

22       16.    Despite WSG's efforts and requests for information, on or about May 8, 2012, FIFA
23 denied the existence of any agreement between the parties, irrespective of FIFA's direction to WSG
24 dated July 31, 2001.  In addition thereto, FIFA subsequently refused to confirm its entitlement to
25 Distribution Proceeds attributable to FIFA "World Cup Soccer" broadcasts, and refused to produce
26 documents that would confirm its ownership to certain "World Cup Soccer" broadcasts.  On or about
27 September 21, 2012, FIFA submitted an affidavit to the Copyright Royalty Board denying WSG's
28 authority to make claim for FIFA programming and, as a result, all WSG claims for 2000-2003 U.S.

cable retransmission royalties for FIFA programming were dismissed by the Copyright Royalty Board.

17. On October 2, 2013, WSG informed FIFA that additional Secondary Rights Royalties, relating to 2004-2009 cable retransmission royalties, and 2000-2009 satellite retransmission royalties, would be forfeited if FIFA did not promptly acknowledge its prior engagement of WSG, or in the absence of FIFA's cooperation. Notwithstanding, FIFA again confirmed that it would not acknowledge WSG's prior engagement, or cooperate with WSG.

## EQUITABLE ESTOPPEL

18. WSG alleges that FIFA must be equitably estopped from asserting the statute of frauds on the following grounds.

19. FIFA was apprised of the facts set forth above, including, but not limited to the fact that, after requesting and receiving several changes to its form agreement from FIFA, WSG had proposed the above referenced contract terms to FIFA, as set forth in Exhibit A, that WSG had made royalty registrations at FIFA's direction, and that FIFA did then tell WSG in its July 31, 2001 email:

> "We refer to your fax sent to Roger Feiner on 22 July 2001 concerning the above-mentioned matter.
>
> "FIFA is interested in testing the services of Worldwide Subsidy Group in the administration of retransmission royalties. Please go ahead with the necessary steps and keep us informed about the proceedings and the outcome."

20. FIFA intended that WSG would act on its above referenced instruction in the July 31, 2001 email, and by making such instruction, acted in a manner such that WSG had a right to believe that FIFA intended WSG to provide the services referenced.

21. WSG was ignorant of any intent on FIFA's part to avoid being bound to an agreement with WSG as set forth in Exhibit A hereto.

22. WSG relied upon FIFA's instruction in the July 31, 2001 email to its injury in that WSG dutifully filed secondary rights royalty claims on behalf of FIFA-owned programming, including claims with the United States Copyright Office applicable to the calendar years 2000

5

through 2012, but was then unable to collect such royalties due to FIFA's disavowal of any agreement with WSG.

23. As set forth in detail above, WSG performed its duties under the Agreement, and if FIFA were to now invoke the statute of frauds, it would cause WSG unconscionable injury in that WSG has engaged in substantial work to obtain valuable copyright royalties for FIFA and itself pursuant to the Agreement, and no good reason exists to deny it the fruit of its labors.

### FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Breach of Contract)

24. WSG incorporates herein by reference the allegations of paragraphs 1 through 23 as if set forth in full here.

25. WSG and FIFA entered into the Agreement.

26. WSG performed all the duties it was obligated to perform pursuant to the Agreement.

27. By denying the existence of the Agreement, by refusing to confirm its ownership of the "World Cup Soccer" broadcasts, by refusing to provide documentation affirming its ownership of the "World Cup Soccer" broadcasts, and by refusing to cooperate with WSG, the Defendants breached the Agreement, causing damages to WSG in an amount to be determined at trial, but not less than $4,000,000.

### SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Breach of Covenant of Good Faith and Fair Dealing)

28. WSG incorporates herein by reference the allegations of paragraphs 1 through 27 as if set forth in full here.

29. Pursuant to the covenant of good faith and fair dealing, WSG and FIFA had a duty to each other to do everything that their contractual relationship presupposed they would do to accomplish its purpose.

30. The Defendants breached the covenant of good faith and fair dealing by denying the existence of the Agreement, by refusing to confirm its ownership of the "World Cup Soccer" broadcasts,

by refusing to provide documentation affirming its ownership of the "World Cup Soccer" broadcasts, and by refusing to cooperate with WSG.

31. By engaging in the aforementioned conduct, FIFA did not do everything that the contractual relationship between WSG and FIFA presupposed it would do to accomplish the purpose of the contractual relationship between WSG and FIFA.

32. Instead, by engaging in the aforementioned conduct, FIFA failed to do everything that the contractual relationship between WSG and FIFA presupposed it would do to accomplish its purpose and, as a result, WSG has been damaged in an amount to be determined at trial, but not less than $4,000,000.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Declaratory Judgment)

33. WSG incorporates herein by reference the allegations of paragraphs 1 through 32 as if set forth in full here.

34. An actual controversy exists between WSG and FIFA regarding whether or not:

(i) WSG and FIFA entered into an agreement in the form of the agreement attached hereto as Exhibit A,

(ii) that FIFA is the owner of the "World Cup Soccer" telecasts, and

(iii) that as a result of such agreement, WSG retained the authority to make claim to Secondary Rights Royalties attributable to the "World Cup Soccer" telecasts.

35. A judicial declaration on these subjects is necessary and appropriate to enable the respective parties to enforce their rights with regard to United States Copyright Office's Cable Royalty Funds and Satellite Royalty Funds.

Wherefore, WSG prays for judgment against the Defendants, as follows:

1. For general damages in a sum to be determined according to proof at trial, but not less than $4,000,000.00;

2. For the costs of suit herein;

1       3.    For a declaration that (i) WSG and FIFA entered into an agreement in the form of the agreement attached hereto as Exhibit A, (ii) that FIFA is the owner of the "World Cup Soccer" telecasts, and (iii) that as a result of such agreement, WSG retained the authority to make claim to Secondary Rights Royalties attributable to the "World Cup Soccer" telecasts; and

      4.    For such other and further relief as the Court may deem just and proper.

Dated: June 19, 2014              PICK & BOYDSTON, LLP

                                        By_____/s/_____
                                            Brian D. Boydston
                                       Attorneys for Plaintiff
                                       WORLDWIDE SUBSIDY GROUP, LLC
                                       a Texas Limited Liability Company

8

wsgvfifa9.FAC.wpd                                       FIRST AMENDED COMPLAINT